IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTHER CARROLL, | |
| Plaintiff, | Hon. Joseph H. Rodriguez |
| v. | Civil Action No. 19-17287 |
| SUNRISE DETOX CHERRY HILL, LLC, SUNRISE DETOXIFICATION CENTER, LLC and PRAESUM HEALTHCARE SERVICES, LLC, | OPINION |
| Defendants. | |

This matter is before the Court on Defendants' Partial Motion to Dismiss, pursuant to Fed. R. Civ. Pro. 12(b)(6) [Dkt. No. 15]. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rules of Civil Procedure 78(b). For the reasons stated below, the Court will grant in part and deny in part Defendants' Partial Motion to Dismiss.

## I. Factual Background

Plaintiff Esther Carroll ("Plaintiff") was employed with Defendants Sunrise Detox Cherry Hill, LLC, Sunrise Detoxification Center, LLC and Praesum Healthcare Services, LLC (hereinafter "Defendants"), "from [on] or about October 2016 until on or about May 7, 2019 as a Substance Abuse Counselor." [Dkt. No. 13 ¶ 13]. According to Plaintiff's Amended Complaint, Defendant Sunrise Detox Cherry Hill, LLC ("Sunrise CH") is a medical detoxification center located in Cherry Hill, New Jersey. (Id. at ¶ 7). Defendant Sunrise Detoxification Center, LLC, is listed as Plaintiff's employer in the employee handbook she kept during her employment with them. (Id. at ¶ 8). Finally, Defendant

1

Praesum Healthcare Services, LLC ("Praesum") "manages and operates several medical detoxification facilities . . . including the facility at which Plaintiff worked in Cherry Hill, New Jersey. (Id. at ¶ 9). Plaintiff finds Defendants to be "sufficiently interrelated to be treated as a single and/or joint employer for purposes of the instant action." (Id. at ¶ 10). The supervisors relevant to Plaintiff's claims are Bilal Simms, clinical director ("Simms"), Morgan Muraresku, service director ("Muraresku"), and Josephine Schettino, regional director ("Schettino"). (Id. at ¶ 14).

Plaintiff alleges that she suffers from various health conditions, including Rheumatoid Arthritis, Asthma, Fibromyalgia, Anxiety, Depression, Sleep Apnea, and Interstitial Cystitis, most of which she treats with medication. (Id. at ¶ 15-16). As a result of these conditions, Plaintiff required workplace accommodations including but not limited to block medical leave, the ability to be late to work, and/or have a flex schedule. (Id. at ¶ 17). Plaintiff alleges that these constitute reasonable accommodations under the NJLAD. (Id. at ¶ 28). She further alleges that to compensate for arriving late to work, she worked consistent overtime, communicated with management regarding scheduling accommodations, and vocalized the need for a flex schedule. (Id. at ¶ 29).

Plaintiff describes what she deems past instances of harassment by Defendants' management in the Amended Complaint as follows: In March of 2017, Plaintiff took block medical leave to recover from injuries partially or fully caused by her Rheumatoid Arthritis. (Id. at ¶ 18). Plaintiff alleges that during this medical leave, she was harassed by Schettino, which prompted her to return to work before fully recovering from her injuries. (Id. at ¶¶ 20, 21). In December of 2018, Plaintiff took an additional leave of absence for an injured leg, which she alleges clinical director Simms met with pretextual discipline. (Id. at ¶¶ 23-24). Some of her health conditions cause her to experience flare

ups of significant pain, typically during the morning hours, which makes it difficult to consistently report to work on time. (Id. at ¶¶ 25-26). Plaintiff alleges that she discussed her frequent tardiness with Defendants and explained that it was a product of her numerous medical conditions. (Id. at ¶ 27). She claims that despite Defendants' knowledge of her medical conditions, management, namely Simms and Muraresku, refused to accommodate her. (Id. at ¶ 28). In addition, Plaintiff claims that the negative treatment and intolerance she experienced from her supervisors worsened in the few months leading to her termination, as her need for disability accommodations increased. (Id. at ¶ 31).

On or about May 7, 2019, Simms and Defendants' Director of Nursing, Dana Fluck ("Fluck") brought Plaintiff into a meeting to discuss a disciplinary action for being tardy. (Id. at ¶ 32). She alleges that during this meeting, she discussed her health conditions and need for accommodations in depth with management. (Id. at ¶ 34). Plaintiff explains that she became emotional and required a break to compose herself. (Id.). Upon returning to work that same day, Plaintiff was approached by her supervisors and was abruptly terminated from employment with Defendants. (Id. at ¶ 37). She alleges that the reason given by Simms and Muraresku for her termination was that she "took too long to get herself together." (Id. at ¶ 38).

## II.     Procedural History

On or about January 27, 2020, Plaintiff filed an Amended Complaint with this Court against Defendants. [Dkt. No. 13 ¶ 1]. The Amended Complaint alleges disability discrimination and unlawful termination due to violations of the Family and Medical Leave Act ("FMLA"), the New Jersey Law Against Discrimination ("NJLAD"), the

Americans with Disabilities act, as amended ("ADA"), and the New Jersey Wage Payment Law ("NJWPL"). (Id.). It includes four causes of action against all defendants: disability discrimination, retaliation, failure to accommodate, and a hostile work environment under the NJLAD (Count I); interference and retaliation under the FMLA (Count II); failure to pay wages and benefits in violation of the NJWPL (Count III); and disability discrimination, retaliation, failure to accommodate, and a hostile work environment in violation of the ADA (Count IV). (Id. at ¶¶ 41-65). Defendants filed a partial Motion to Dismiss with this Court on February 10, 2020. [Dkt. No. 15]. (Id.).

### III. Standard of Review for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to

---

[1] Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations...are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

5

Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Analysis

### A. Motion to Dismiss for Failure to State a Claim of Joint Employer Liability of Sunrise Detoxification Center, LLC and Praesum Healthcare Services, LLC under the NJLAD, FMLA, NJWPL and ADA

Defendants first argue that Plaintiff's claims against Defendants Sunrise Detoxification Center, LLC and Praesum Healthcare Services, LLC fail because Plaintiff insufficiently pled joint employer liability for violations of the enumerated statutes. [Dkt. No. 15-2]. Specifically, Defendants' contend that Plaintiff's allegations are conclusory and lack any "specific facts supporting any interaction or employment that Plaintiff allegedly had with Sunrise Detoxification Center, LLC and Praesum Healthcare Services, LLC, or actions these entities supposedly took with respect to Plaintiff's employment." (Id. at pp. 9-10). The Court agrees.

Courts are not bound by a plaintiff's "bald assertions" or "legal conclusions," and a complaint must show an entitlement to relief with facts. Id. Here, Plaintiff attempts to

link all of the Defendants under the assertion that they are sufficiently related, such that they may be treated as joint employers for the instant action. (Id. at ¶ 10). Beyond this allegation, the Amended Complaint does not contain facts to support a finding that the companies are affiliated with one another to the extent that they can plausibly be considered "joint employers."

### 1. Joint Employer Liability under the NJLAD

The New Jersey Supreme Court has consistently applied the test established in D'Annunzio v. Prudential Life Insurance Co. of America to determine joint employer liability under the LAD, which directs the Court to consider the following factors:

> (1) the employer's right to control the means and the manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is an annual leave; (9) whether the work is an integral part of the business of the "employer," (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

192 N.J. 110, 123 (2007); see also Alston v. Monmouth Cty. Prosecutor's Office, No. CIV.A. 12-5633 FLW, 2014 WL 1095716, at *8 (D.N.J. Mar. 19, 2014).[3] The "hybrid" test, originally identified in Pukowsky v. Caruso, examines "the extent to which there has been a functional integration of the employer's business with that of the person doing the work." Id. The first factor—the employer's right to control the means and the

---

[3] "Under the NJLAD, courts determine whether an employer-employee relationship exists between plaintiff and defendant by applying a test that is similar to the [Title VII] test, the *Pukowsky* test." Plaso v. IJKG, LCC, No. CIV.A. 11-5010, 2013 WL 2182233, at *6 (D.N.J. May 14, 2013), aff'd sub nom. Plaso v. IJKG, LLC, 553 F. App'x 199 (3d Cir. 2014)

7

manner of the worker's performance— has been considered "the most important" in determining joint employer liability. See Chrisanthis v. Cnty. of Atlantic, 361 N.J. Super. 448, 455, 825 A.2d 1192 (App. Div. 2003); Alston v. Monmouth Cty. Prosecutor's Office, No. CIV.A. 12-5633, 2014 WL 1095716, at *8 (D.N.J. Mar. 19, 2014).

Here, Defendants argue that the Amended Complaint fails to factually allege that Sunrise Detoxification Center and Praesum are joint employers. [Dkt. No. 15-2 p. 7]. According to the Amended Complaint, Praesum "manages and operates several medical detoxification facilities . . . including the facility at which Plaintiff worked," and Defendant Sunrise Detoxification Center is listed as Plaintiff's employer in the "Employee Handbook presented to Plaintiff during her employment." [Dkt. No. 13 ¶¶ 8-9]. Plaintiff's Amended Complaint further concludes that Defendants have an "interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors," so they are "sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action." [Dkt. No. 13 ¶ 10].

Plaintiff, however, fails to plead any factual support to show more than a mere possibility of an employment relationship. See Washington v. Client Network Services, Inc., 590 F. App'x 126 (3d Cir. 2014) (holding that a failure to adequately meet the standard of alleging any employment relationship will result in the court's granting of a defendant's motion to dismiss). While the Amended Complaint appears to allege that Praesum has some control by way of general management and operation, standing alone, the information provided is conclusory, and fails to adequately plead a theory of joint employer liability. Likewise, stating that Sunrise Detoxification Center is listed as

8

an "employer" is insufficient to establish any of the twelve factors the Court must consider in evaluating an employee-employer relationship. As pled, Plaintiff cannot establish any plausible LAD claim against Sunrise Detoxification Center or Praesum under a theory of joint employer liability.

### 2. Joint Employer Liability under the FMLA

To prove that multiple entities constitute a single employer under the FMLA, an employee may utilize either the joint employment test, or the integrated employer test; the "joint employer test" looks to whether there are sufficient indicia of an employer/employee relationship to justify imposing liability on non-legal employer. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq; 29 C.F.R. §§ 825.104(c)(1), 825.104(c)(2), 825.106.

Under the FMLA, "where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers." 29 C.F.R § 825.106(a). Further, "joint employers may be separate and distinct entities with separate owners, managers and facilities." Id. A joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees; (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or, (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

Id. at § 825.106(a)(1)-(3). A court will determine whether a joint employer relationship exists based on the totality of the circumstances. 29 C.F.R. § 825.106(b)(1). Further, it has been established that "two entities may be considered joint employers, for purposes

9

of satisfying the requirements of the FMLA, if they handle the core aspects of their employer-employee relationships jointly.

Here, Defendants contend that since Plaintiff failed to provide factual assertions of the employers' "simultaneous control over [her] working conditions," she did not adequately establish joint liability under the standards set forth in the FMLA. [Dkt. No. 15-2 p. 9 (citing Kieffer v. CPR Restoration & Cleaning Serv., LLC, 200 F. Supp. 3d 520, 532 (E.D. Pa. 2016), aff'd sub nom., 733 F. App'x 632 (3d Cir. 2018)).]. In response, Plaintiff argues that she has met the minimum requirements of notice pleading, as this case is "in its earliest stages of litigation," with no discovery of any kind. [Dkt. No. 16 p. 6]. In particular, Plaintiff argues that she fulfilled the requirement to show that employers exercised "significant control over her working conditions," by stating in the Amended Complaint that "Defendant Praesum managed and operated the facility at which Plaintiff worked in Cherry Hill, New Jersey." (Id. at p. 9).

Although Plaintiff is correct, in that she does not have to prove liability at this stage, the Amended Complaint does not articulate enough facts to state a plausible claim of relief. The Court finds that the Plaintiff did not adequately establish that employers Sunrise Detoxification Center and Praesum maintained significant control over her working conditions by merely concluding such in her Amended Complaint. Even in this early posture, Plaintiff's Amended Complaint fails to include factual allegations that would support any of the three joint employer liability situations provided by FMLA's regulations.

### 3. **Joint Employer Liability Under the NJWHL/NJWPL**

The NJWHL defines "employer" as "any individual, partnership, association, joint stock company, trust, corporation . . . or the receiver, trustee, or successor of any of the same, employing any person in this State." Ruiz v. S. Jersey Painting Co., No. A-3264-11T4, 2013 WL 3762688, at *2 (N.J. Super. Ct. App. Div. July 19, 2013) (citing N.J.S.A. 34:11-56a(1)(g)). Further, for purposes of this act, "the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." Id.

The New Jersey Supreme Court has not yet defined the standard for classifying employers as joint employers under the NJWPL or NJWHP. Chen v. Domino's Pizza, Inc., 2009 WL 3379946, at *4. The court in Chen v. Domino's Pizza, Inc., however, utilized the twelve-factor test established in Pukowsky, and later in D'Annunzio, to determine whether a party was an employer for purposes of establishing an employment relationship under the NJWHL. Id. The court granted the defendant's motion to dismiss in Chen because it found that the plaintiff failed to plead facts in the Complaint sufficient to show that an employment relationship existed between them and the defendant. Id.

Here, Defendants assert that Plaintiff's Amended Complaint is insufficient to withstand a motion to dismiss under the D'Annunzio factors test for failing to plead sufficient facts to support an employer relationship. [Dkt. No. 15-2]. As explained in detail above, Plaintiff in this case fails, like in Chen, fails to fulfill her obligation to "provide the grounds of [her] entitle[ment] to relief." [Dkt. No. 13 ¶¶ 8, 9, 10]; Twombly, 127 S. Ct. at 1964-65. Plaintiff submits, however, that the proper test for determining

joint liability under the NJWPL or NJWHL is the test set forth in Enterprise, in which the court evaluated joint employer liability under the FLSA. See In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012). Under this test, the court must consider:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance or taxes."

Enterprise, 683 F.3d at 469. Furthermore, "if a court concludes that other indications of 'significant control' are present to suggest that an employer was in fact a joint employer, that determination may serve to bolster the findings in the factors test." Id. Again, courts have not distinguished a prevailing test under the NJWHL or NJWPL; however, Plaintiff's Amended Complaint alleges only conclusory statements as to the relationships among Defendants, and also neglects to set forth specific allegations that fulfill the factors set forth in the Enterprise test. [Dkt. No. 13 ¶¶ 8, 9, 10]. Therefore, Plaintiff has not pled sufficient facts to state a claim for joint employment liability against Sunrise Detoxification Center and Praesum under the NJWHL or the NJWPL.

### 4. Joint Employer Liability Under the ADA

The Third Circuit has applied the Lewis factors utilized in Enterprise to evaluate joint employer liability under the ADA. See In Re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d at 469. While there is little case law establishing a specific test under the ADA, the Third Circuit affirmed the court's use of the Enterprise test in Cella v. Villanova University to establish joint employment liability under the

12

ADA. 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003), aff'd, 113 F. App'x 454 (3d Cir. 2004). In Cella, the court granted the defendant's motion for summary judgment, on the basis that the employee failed to plausibly allege a joint employment relationship. Id.

Here, Defendants argue that based on the court's treatment of the facts under the Enterprise test in Cella v. Villanova University, this Court should grant the motion to dismiss. [Dkt. No. 15-2 at 10]. They further assert that because Plaintiff "failed" to allege sufficient facts to establish joint employer liability under the LAD, FMLA or the NJWHL, she cannot establish such a relationship under the ADA. (Id. p. 11). In opposition to Defendants' motion, Plaintiff argues that "use of Defendant Sunrise DC's employee handbook . . . demonstrates that Defendant Sunrise DC promulgated work rules and set conditions of employment." [Dkt. No. 16 p. 10].

As stated above, Plaintiff's Amended Complaint is insufficient under the Enterprise test. The fact that "Defendant Sunrise Detoxification Center, LLC is the company listed as Plaintiff's employer on the Employee Handbook," is not in itself indicative of sufficient or joint control over Plaintiff's employment or working conditions, as Plaintiff seeks to assert. [Dkt. No. 13 ¶ 8]. Therefore, Plaintiff fails to state a claim of joint employer liability under the ADA. Accordingly, the Court will dismiss Defendants Sunrise Detoxification Center and Praesum from this case.

### B. Whether Plaintiff Pled Sufficient Facts to Allege a Hostile Work Environment Claim Against Employer, Sunrise Detox Center, LLC in Violation of the NJLAD and the ADA

Defendants argue that Plaintiff has also failed to plead sufficient facts to sustain a hostile work environment claim against her employer, Sunrise CH under the NJLAD and the ADA. [Dkt. No. 15-2 p. 13].

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5–4.1. Analysis of claims made pursuant to the NJLAD generally follow the analysis used in Title VII employment discrimination claims, Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999), and New Jersey courts employ the three-step burden shifting standard articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801–04 (1973). See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 867 (N.J. 2005).

To state a prima facie hostile work environment claim under the NJLAD, a plaintiff must show that the complained of conduct: "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or abusive." [4] Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 445, 453 (N.J. 1993) (citing Lehmann v. Toys 'R' Us., Inc., 132 N.J. 587, 626 (N.J.1993)). To determine whether an environment is "hostile" or "abusive," the court should look to the circumstances, including but not limited to the discriminatory

---

[4] Similar to the test prescribed for a hostile work environment claim under the NJLAD, a claim based on disability, in violation of ADA, requires a showing that: "(1) [plaintiff] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) employer knew or should have known of the harassment and failed to take prompt effective remedial action." McClaren v. NJ State Dep't of Educ., No. CIV.A. 14-3213 FLW, 2015 WL 337481, at *6 (D.N.J. Jan. 26, 2015) (citations omitted).

conduct's frequency, severity, physicality, and extent to which it interferes with the employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). A viable hostile work environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace. Jackson v. Gannett Co., 2011 WL 3362154 at 4-5. See DeAngelis v. El Paso Municipal Police Officers Ass'n, 51 F.3d 591 (5th Cir.), cert. denied 516 U.S. 974 (1995).

The New Jersey Supreme Court adopted the "severe or pervasive" test established by the United States Supreme Court in Harris v. Forklift Systems, Inc. as the relevant standard of proof regarding hostile work environment claims under the NJLAD. Taylor v. Metzger, 152 N.J. 490 (N.J. 1998). The Court in Harris held that "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Harris v. Forklift Sys. Inc., 510 U.S. at 21.

To define what constitutes and does not constitute severe or pervasive conduct, New Jersey courts have looked to the definition adopted by the United States Supreme Court, holding that:

> simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment . . . . Properly applied [these standards for judging hostility] will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [discriminatory] jokes, and occasional teasing. We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.

Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); see also Clayton v. City of Atlantic City, 538 F. App'x 124, 128 (3d Cir. 2013) (citing Faragher in dismissing the plaintiff's case under the NJLAD). The requirement that a plaintiff demonstrate severe or pervasive discrimination "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Sanchez v. Sungard Availability Servs. LP, No. CIV. 06-3660 (DRD), 2009 WL 1312918, at *5 (D.N.J. May 5, 2009), aff'd, 362 F. App'x 283 (3d Cir. 2010) (citing Harris v. Forklift Sys. Inc., 510 U.S. at 21). The "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII" or the NJLAD. Sanchez v. Sungard Availability Servs. LP, 2009 WL 1312918, at *5.

The Third Circuit has emphasized that the "severe or pervasive" standard applicable to hostile work environment claims under Title VII[5] and the NJLAD is disjunctive, so a plaintiff need not show that her environment was both severe and pervasive, only that it was sufficiently one or the other. Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 214 (3d Cir. 2017).

Here, Plaintiff's Amended Complaint alleges that she was subjected to harassment: when Schettino told Plaintiff that she needed to come back to work while on medical leave, making Plaintiff "feel guilty about taking medical leave by telling her that Muraresku was by herself and needed help;" and when she was written up for taking a day off to treat a leg injury caused by her Rheumatoid Arthritis. [Dkt. No. 13 ¶¶ 19-20, 23-24]. Plaintiff also alleges that she explained to her supervisors that her health

---

[5] The standard applicable to an analysis under the ADA closely follows any analysis under Title VII. Walton v. Mental Health Ass'n, 168 F.3d 661, 666 (3d Cir. 1999)

conditions often caused her to arrive late to work, but her supervisors refused to accommodate her request for a flex schedule and further "reprimanded Plaintiff for her tardiness, including but not limited to issuing her written discipline." (Id. at ¶¶ 27-29). Finally, the Amended Complaint alleges that "Plaintiff discussed her health conditions and need for accommodations in depth with Defendants' management at their May 7, 2019 meeting" and was later terminated that same day. (Id. at ¶¶ 34-37).

Defendants argue that Plaintiff's allegations do not show that her supervisors engaged in conduct that would be classified as "hostile" or "abusive" to meet the "severe or pervasive" standard for a hostile work environment claim. [Dkt. No. 15-2 p. 13-14]. More specifically, Defendants contend that such allegations against Plaintiff's supervisors could, at most, be described as "discourteous" or "insensitive," but "not so severe or pervasive as to alter the conditions of employment to render her environment hostile or abusive." [Dkt. No. 15-2, p. 15). Furthermore, Defendants argue that Plaintiff's Amended Complaint does not plausibly state a prima facie case of hostile work environment because it fails to show Plaintiff was harassed due to disabilities and/or use of block medical leave. (Id.)

In response, Plaintiff stresses that "while Defendants suggest that Plaintiff must prove her entire prima facie case at the pleading stage, [she] is not obligated to do so." [Dkt. No. 16, p. 15]. Plaintiff reestablishes the notice pleading standard of proof under Twombly, to argue that she does not have to meet the standard for a prima facie case under the McDonnell Douglas test, but rather "allege facts to raise the right to relief above a speculative level." (Id. at p. 16). She also asserts that she adequately demonstrated her subjection to a "hostile" or "abusive" work environment in the Amended Complaint, as she "included allegations as to multiple, specific incidents in

17

which she was harassed at work in direct connection to her health conditions." (Id. at p. 17). The Court agrees.

First, Plaintiff is correct in that she need not prove her prima facie case at this stage. And, to be sure, Defendants improperly argue that "no reasonable fact finder could find" that the conduct complained of "related to Plaintiff's medical condition or that it impermissibly altered the conditions of her employment for the worse." [Dkt. No. 15-2, p. 14-15]. On a motion to dismiss, the Court does not ask what a reasonable fact finder could conclude, rather the Court looks only to the well-pleaded facts in the complaint to determine if there is a plausible claim. The Court finds that here, the incidents of alleged harassment rise to the level of pervasiveness such that Plaintiff's right to relief rises above the speculative level.

"Incidents of harassment are pervasive if they occur in concert or with regularity." Cortes v. Univ. of Med. & Dentistry, 391 F. Supp. 2d 298, 308 (D.N.J. 2005). Here, the Amended Complaint demonstrates that on each of the multiple occasions that Plaintiff discussed her medical conditions, and took leave for reasons relating to those conditions, her supervisors failed to accommodate her and/or reprimanded her. Taken together, these actions were not "isolated incidents." Moreover, the Amended Complaint provides that this alleged harassment caused Plaintiff to alter her medical leave, and ultimately resulted in her termination. Therefore, the Court finds that Plaintiff has sufficiently pled that the complained of conduct would not have occurred but for her disability, and was sufficiently severe or pervasive. Accordingly, the Court will deny Defendants' Motion to Dismiss Plaintiff's hostile work environment claims.

## V.     Conclusion

For the reasons stated above, Defendants' Partial Motion to Dismiss [Dkt. No. 15] will be granted in part and denied in part.

An appropriate Order shall issue.

Dated: July 22, 2020

   /s/ Joseph H. Rodriguez   
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE
